PERFORATED PLATE CO. et al. v. CONNOLLY et al.

(District Court, S. D. New York. June 20, 1912.)

Patents (§ 328*)—Validity and Infringement—Heat-Regulating Device.

Evidence considered, and *held* to show priority of invention in favor of the Elliott & Stanton patent, No. 883,183, for a device for regulating the heat applied to cooking utensils, over that of the Cruickshank patent, No. 864,518, for the same invention. The Elliott & Stanton patent also *held* valid and infringed.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Perforated Plate Company and the New England Enameling Company, Incorporated, against James F. Connolly, doing business as J. F. Connolly & Co., and the J. F. Connolly Manufacturing Company. On final hearing. Decree for complainants.

Kenyon & Kenyon (Robert N. Kenyon, Richard Eyre, and Gorham Crosby, of counsel), for complainants.

Charles McC. Chapman, for defendants.

HOLT, District Judge. This is a suit to restrain the alleged infringement by the defendants of a patent, No. 883,183, issued to Elliott & Stanton on March 31, 1908, for a device for regulating the heat applied to cooking utensils. The defendants own a patent, No. 864,518, issued to Cruickshank August 27, 1907. The Cruickshank patent, having been issued earlier than the Elliott & Stanton patent, presumably has priority; but the complainants claim that the invention described in the Elliott & Stanton patent was made earlier than the invention described in the Cruickshank patent. In my opinion, that is the sole question in the case.

I think that none of the prior patents cited show anticipation, that the defense that the apparatus manufactured under the Elliott & Stanton patent was in public use more than two years before the application for the Elliott & Stanton patent is not sustained, and that the claim that the Elliott & Stanton patent is invalid as a mere aggregation is untenable. The device manufactured and sold by the defendants, in my opinion, is substantially the same as that shown in the complainants' patent. The simple fact is that the invention shown in the Elliott & Stanton patent and in the Cruickshank patent is identical, and, when it is determined which patent is entitled to priority over the other, it results that an article manufactured under the other infringes.

The application for the Cruickshank patent was filed in the Patent Office on August 25, 1906. The application for the Elliott & Stanton patent was filed March 26, 1907. The Cruickshank patent was issued August 27, 1907, and the Elliott & Stanton patent was issued March 31, 1908. The Elliott & Stanton application, therefore, was made after the Cruickshank application, but before the Cruickshank issue. In the ordinary course of business in the Patent Office, an interference would have been declared; but, the invention being of an anomalous character, the Elliott & Stanton application was assigned to "Class 53, Domestic Cooking Vessels, Boilers, Domestic," and the Cruickshank application was assigned to "Class 233, Heating and Cooking Stoves, Liquid, Gaseous Fuel, Stoves, Cooking, Lids and Tops." The result was that the examiner in the Patent Office who was examining each application had no knowledge of the pendency of the other, and the two patents were issued without any interference being declared.

The complainants claim, however, that the invention embodied in the Elliott & Stanton patent was made earlier than the Cruickshank patent. They have introduced a large amount of evidence, which

satisfies me that Elliott & Stanton, late in 1904, or early in 1905, conceived the idea of the device in suit, constructed a device in accordance with it, and continued experimenting with it in Elliott's store in Saugerties until about the spring of 1906, when they manufactured several of the devices, which were put in practical use that summer. The earliest date of which there is any record proof of the Cruickshank invention is June 1, 1906, when the British application for a patent was filed. Cruickshank asserts that he made the invention in 1889, 17 years before, while working in a mine near San Francisco. He testifies, in substance, that he originally took the covers of two tin cans, inserted one into the other, so as to fasten them together, made holes in the upper and lower sides, and used the apparatus for cooking. He claims that he cooked mush with it, but that it cooked very slowly, and that he ultimately abandoned its use for that purpose, and used it only to heat milk. He claims that he lived alone and did his own cooking, and that no one in California saw the device. He returned to England in 1892. He claims he took with him one of his devices, and used it abroad for heating milk, but never showed it to any one. In 1901 or 1902, he had one, and in 1905 a second one, made in France by Mr. Baloche, locksmith and ironworker, Ru-Breda. He left Paris in 1905, and went back to London, and in June, 1906, he had two made in London, one of which was sent to an American patent solicitor for the purpose of drawing the papers for an application for a United States patent, and the other was given to Mr. Tainter, who brought it to America.

As the evidence satisfies me that Elliott & Stanton made the invention as early as the end of 1904, or the beginning of 1905, the proof of the manufacture of the device by Cruickshank in London in 1906, and of any subsequent acts in reference to the patent, is immaterial on the question of priority of invention. The question is whether Cruickshank actually made the invention and reduced it to form before the device was manufactured in London. He himself testifies that he made the original devices himself and intentionally prevented any one from seeing them, and that no one ever did see them until the specimens were made in Paris by Baloche, the first in 1901 or 1902, and the second in 1905. It seems strange that a man should have been using a cooking utensil frequently in his room for years, and that he cannot produce any one to corroborate his testimony who was about the place.

Assuming that he intentionally concealed it from everybody, we have a case of a rival patentee undertaking to prove priority of invention by his own evidence, without the slightest corroboration. But when we come to the date of the manufacture by Baloche in 1901 or 1902, then Cruickshank's evidence, if true, could probably be corroborated. Why is not Baloche, or any of his workmen, produced? Or, if they have disappeared, why is no evidence given of any efforts to find them? If trustworthy evidence were given of the manufacture of the patented device by Baloche in Paris in 1901 or 1902, that would be the end of the case. The only witness who attempts to corroborate Cruickshank is Tainter. Tainter says that Cruickshank applied to him in

the spring of 1906 for financial assistance in getting out the patents, and that a year or a year and a half previous to that he first knew of the device and saw Cruickshank using it in London. But Cruickshank says that Tainter was in error in his dates, that Tainter did not leave England for America until February, 1907, that he (Cruickshank) did not arrive in London from Paris until September, 1905 and that Tainter first saw him using the device on an oil stove in 1906. These dates given by Cruickshank are strongly corroborated by written entries and memoranda, and I have no doubt are entirely correct. This evidence of Cruickshank is certainly very candid and honest, and I may say that, while the story which he tells is quite extraordinary and on its face improbable, the reading of Cruickshank's testimony has not impressed me unfavorably.

At the same time, all the evidence of Cruickshank to the effect that he invented the device in 1889, or that he used it prior to the time that the proof satisfies me that Elliott & Stanton invented it, is absolutely uncorroborated, and, in my opinion, the absence of corroboration, particularly from Baloche or his men, and the absence of proof of any attempt to obtain their evidence, makes it impossible to determine on Cruickshank's testimony alone that he made the invention earlier than Elliott & Stanton. It would be a dangerous precedent to establish that a patent can be invalidated by a claim of prior invention based on the entirely uncorroborated evidence of a rival patentee. Moreover, if Cruickshank's testimony were fully accepted, in my opinion, the correct conclusion to draw from it would be that whatever invention he originally made, in 1889, was abandoned by him until he concluded to try to revive it and obtain a patent for it many years later.

The complainant is entitled to a decree as demanded in the bill.